**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION**

| | |
|---|---|
| CASSADI COLBERT | Civil Action No. _____ |
| *Plaintiff*, | |
| *vs*. | **COMPLAINT and DEMAND FOR JURY TRIAL** |
| UNIVERSITY OF SOUTH ALABAMA, ALEXIS MEEKS-RYDELL, JOEL ERDMANN, ROB CHILCOAT, PATRICIA GANDOLFO, JINNI FRISBEY, and CHRIS MOORE | |
| *Defendants*. | |

## COMPLAINT

Plaintiff Cassadi Colbert, by and through undersigned counsel, now file this Complaint against Defendants University of South Alabama (the "University"), Alexis Meeks-Rydell ("Meeks-Rydell"), Joel Erdmann ("Erdmann"), Rob Chilcoat ("Chilcoat"), Patricia Gandolfo ("Gandolfo"), Jinni Frisbey ("Frisbey"), and Chris Moore ("Moore") (together, "Defendants"), alleging as follows:

## INTRODUCTION

1.      This involves a pattern and practice of blatant sexual harassment and sexual and other physical and emotional assault by Defendant Meeks-Rydell during her time as the Head Coach of the University of South Alabama women's volleyball team (the "Volleyball Team" or "Team"). This activity, pattern and practice took place from January 1, 2019, through the 2019-2020 academic school year at the University, and in connection with University-sanctioned

wrongful conduct, Defendant Meeks-Rydell was acting in her capacity as Head Coach of the University women's Volleyball Team.

2.       In Spring 2019, Plaintiff matriculated at the University of South Alabama with the express promise of a prestigious Division I volleyball career and competitive academic opportunities. However, Plaintiff's athletic and academic aspirations were negatively impacted by the misconduct of the women's volleyball Head Coach, Defendant Meeks-Rydell; Assistant Coaches, Defendants Chilcoat and Gandolfo; and the University's facilitation and ratification of her conduct. Plaintiff's athletic and academic aspirations were also irreparably impacted by the University's decision to ignore Defendant Meeks-Rydell's relentless and pervasive pattern of harassment and physical, psychological, and emotional abuse, in addition to other wrongful acts by the Defendants.

3.       Meeks-Rydell physically abused Plaintiff by inappropriate touching, including unwanted pinching of Plaintiff's buttocks, forced hugs, overtraining, and intimidating Plaintiff. Meeks-Rydell used psychological and emotional manipulation and intimidation, among other tactics, to leverage and abuse her position of power and authority over Plaintiff. At the hands of Meeks-Rydell, Plaintiff suffered harassment and abuse so severe that she not only suffered physical and psychological issues, but she was also left with no choice but to abandon her athletic and academic career at the University of South Alabama.

4.       Defendant Meeks-Rydell's relentless and pervasive pattern of harassment and abuse occurred in violation of federal and state laws, as well as in violation of National Collegiate Athletic Association ("NCAA") regulations established to protect student-athletes' educational opportunities outside of their chosen sport. The University had a duty to protect its students from such abuse and the University failed to do so. The University knew of Defendant Meeks-Rydell's

misconduct, through its officials and agents who were in positions to remedy the circumstances and refused to act to protect Plaintiff and other student athletes. The University acted with deliberate indifference to Meeks-Rydell's actions and the abuse to which Plaintiff was subject. As a result of the University's actions and failures to act, Plaintiff was deprived of her enjoyment of educational opportunities and programs to which she was entitled as student-athlete at the University of South Alabama.

5.      The allegations herein are made upon knowledge of Plaintiff and, as to all other matters, upon information and belief gained from investigation undertaken by Plaintiff's counsel.

6.      Plaintiff further complains and alleges as follows:

**PARTIES**

7.      Plaintiff Cassadi Colbert is a 21-year-old student and is a citizen of the State of Indiana. Plaintiff matriculated to the University of South Alabama in the Spring of 2019.  Due to Defendant Meeks-Rydell's pervasive harassment and abuse, Plaintiff transferred from the University.

8.      Defendant University of South Alabama is a government entity and public university, located in Mobile, Alabama. The University is a recipient of federal funds under Title IX, 20 U.S.C. §§ 1681-1688 ("Title IX").

9.      Defendant Alexis Meeks-Rydell was, at all relevant times hereto, a resident citizen of Mobile County, Alabama, where she was employed by the University as head coach of the University's women's volleyball team. Meeks-Rydell resigned from the University in February 2021. Meeks-Rydell is being sued in her individual capacity and, as to claims seeking declaratory and injunctive relief, in her official capacity as an agent and/or employee of the University.

10.     Defendant Joel Erdmann was, at all relevant times hereto, a resident citizen of Mobile County, Alabama, where he was, and still is, employed by the University as Athletic Director.

11.     Defendant Jinni Frisbey was, at all relevant times hereto, a resident citizen of Mobile County, Alabama, where she was, and still is, employed by the University as Senior Associate Athletic Director.

12.     Defendant Chris Moore was, at all relevant times hereto, a resident citizen of Mobile County, Alabama, where he was, and still is, employed by the University as Associate Athletic Director.

13.     Defendant Rob Chilcoat was, at all relevant times hereto, a resident citizen of Mobile County, Alabama, where he was employed by the University as an Assistant Coach of the Volleyball Team.

14.     Defendant Patricia Gandolfo was, at all relevant times hereto, a resident citizen of Escambia County, Florida.

## JURISDICTION AND VENUE

15.     This action is filed pursuant to 42 U.S.C § 1983 and 20 U.S.C. § 1681, *et seq*. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

16.     This action also claims violations of Alabama state law. As these claims are so related to the claims under Federal law that they form part of the same case and controversy, this Court has supplemental jurisdiction to hear the Alabama state law claims pursuant to 28 U.S.C. § 1367(a).

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and other applicable law, as the causes of action arose primarily in Mobile County, Alabama, which is situated within the district and divisional boundaries of the Southern District of Alabama, Mobile Division.

## FACTS

### I.      THE UNIVERSITY'S WOMEN'S VOLLEYBALL COACHING STAFF

18.     Defendant Meeks-Rydell was hired as the University's Women's Volleyball Team Head Coach on December 31, 2018.

19.     Due to Defendant Frisbey's knowledge of inappropriate conduct of coaches and/or assistant coaches from the previous regime, Defendant Frisbey promised members of the Volleyball Team that she would supervise the transition of Coach Meeks-Rydell's coaching regime to ensure that no inappropriate conduct would take place.

20.     On or about February 26, 2021, the University announced Defendant Meeks-Rydell was resigning as Head Coach of the Women's Volleyball Team.

21.     Purdue University Fort Wayne, a University in Fort Wayne, Indiana hired Defendant Meeks-Rydell on June 1, 2021. Purdue University Fort Wayne placed Meeks-Rydell on administrative leave in September 2021. Meeks-Rydell's employment with Purdue University Fort Wayne ended in December 2021.

22.     As Head Coach of the University's Volleyball team, Defendant Meeks-Rydell had full authority to manage the Team, including scheduling training, practice, travel, meetings, and arrange who would play in games. She also had complete authority to manage the team roster, including offering players positions on the University's Women's Volleyball Team as well as cut members from the team.

23.     According to information and belief, the rest of the coaching staff for the University's Women's Volleyball Team, at all relevant times, consisted of two assistant coaches – Defendants Rob Chilcoat and Patricia Gandolfo. Both Defendants Chilcoat and Gandolfo had the authority to take corrective action in the event of wrongful or illegal conduct directed at Plaintiff.

24.     Assistant Coach Defendant Rob Chilcoat, prior to joining the University coaching staff in January 2019, worked with Defendant Meeks-Rydell for three seasons, coaching women's volleyball at the University of West Alabama from 2016 to 2018.[1]

25.     Assistant coach Defendant Patricia Gandolfo coached women's volleyball since 2010, and she joined the University's coaching staff in May 2019.[2]

## II.    MEEKS-RYDELL'S ABUSIVE COACHING TACTICS

26.     As Head Coach of the women's Volleyball team, Meeks-Rydell held a position of authority among the Volleyball Team members, including Plaintiff. As Head Coach, Defendant Meeks-Rydell controlled team membership, positions, playing time and the power to grant or withhold lucrative scholarships for members of the Volleyball Team.

27.     Beginning in or about January 2019, Defendant Meeks-Rydell had nearly constant contact with members of the Volleyball Team, including Plaintiff. Defendant Meeks-Rydell supervised the Volleyball Team during daily practices, hosted numerous mandatory social gatherings for team members, and made frequent after-hours contact with team members via telephone, text messages, and/or internet messaging.

---

[1] https://usajaguars.com/sports/womens-volleyball/roster/2019 (last visited Apr. 6, 2022)
[2] https://usajaguars.com/sports/womens-volleyball/roster/2020 (last visited Apr. 6, 2022)

28.     Defendant Meeks-Rydell created a climate of fear and intimidation among the Volleyball Team while she was the Head Coach, including engaging in a pattern and practice of physical, verbal, and psychological abuse to the Volleyball Team and Plaintiff individually.

29.     According to information and belief, Defendant Meeks-Rydell also told the Volleyball Team that her personal problems were caused by the Volleyball Team's failures as a volleyball team. For example, Defendant Meeks-Rydell told the Volleyball Team that:

a. The Volleyball Team caused her to contract cancer;

b. The Volleyball Team caused her marital problems;

c. Plaintiff and the Volleyball Team were going to cause Meeks-Rydell to lose her job.

30.     Defendant Meeks-Rydell used the above listed tactics, among others, to create and foster a hostile and toxic environment for Plaintiff and the Volleyball Team.

31.     Defendant Meeks-Rydell used methods disallowed by the NCAA to punish Plaintiff.

32.     Among the punishments imposed on Plaintiff were "breakfast clubs." Breakfast clubs consisted of forcing the Volley Team and Plaintiff to arrive at the gym as early as 4:00 a.m., where Defendant Meeks-Rydell would force Plaintiff and other players to run and do other physical drills until the players vomited, passed out, or cried due to inability to continue.

33.     Typically, Defendant Meeks-Rydell would send a text late at night to the players who would be subjected to a "breakfast club" the next day, causing Plaintiff extreme stress, anxiety, sleeplessness, and distress.

34.     Defendant Meeks-Rydell routinely required Plaintiff to be at the gym as early as 4:00 a.m. for breakfast clubs and before 5:00 a.m. for practices in violation of the NCAA Bylaws relating to permitted practice times.[3]

35.     In addition to physical, verbal, and psychological abuse. Defendant Meeks-Rydell also touched Plaintiff and other volleyball players and engaged in physical conduct rising to the level of sexual harassment and/or assault.

36.     For example:

a.   Whenever the Volleyball Team traveled for games, Defendant Meeks-Rydell would pinch Plaintiff's and other players' butts as they exited the bus;

b.   Defendant Meeks-Rydell forced Plaintiff and Volleyball Team members to hug her and tell her that they loved her;

c.   Defendant Meeks-Rydell forced Plaintiff to constantly tell her that she loved her in person;

d.   If Defendant Meeks-Rydell perceived that she was not getting enough positive attention from her players and Plaintiff individually, she would punish Plaintiff by subjecting her to emotional and/or verbal abuse or by making Plaintiff participate in intense physical punishment such as breakfast clubs.

37.     Several University officials had direct knowledge of Defendant Meeks-Rydell's abusive conduct listed above, including but not limited to Defendants Erdmann, Frisbey, Moore, Chilcoat, and Galdolfo. Several University officials had the authority to take corrective action in

---

[3] NCAA Bylaw 17.1.7.11.6.1, effective 8/1/2017, states "Required athletically related activities other than   competition (and associated activities) shall not occur during a continuous eight-hour period between 9 p.m. and 6 a.m."
*See* https://web3.ncaa.org/lsdbi/reports/getReport/90008

the event of wrongful or illegal conduct directed at Plaintiff, including but not limited to Defendants Erdmann, Frisbey, Chilcoat, and Gandolfo.

38.     Defendant Meeks-Rydell abused and belittled Plaintiff and would coerce and force Plaintiff to play through her injuries.

39.     Defendant Meeks-Rydell resigned from her position at the University on or about February 26, 2021.

III.     **ADDITIONAL FACTS SPECIFIC TO PLAINTIFF**

40.     Defendant Meeks-Rydell used her authority and position of power as Head Coach to manipulate and control Plaintiff.

41.     While still employed by the University of West Alabama, Defendant Meeks-Rydell targeted Plaintiff in recruitment because Defendant Meeks-Rydell perceived Plaintiff as having a reputation for obedience to authority.

42.     After taking the job of Head Coach at the University of South Alabama, Defendant Meeks-Rydell recruited Plaintiff to follow her to the University to play on the Volleyball Team.

43.     Plaintiff was the only recruit that Meeks-Rydell would take with her to the University.

44.     Defendant Meeks-Rydell promised Plaintiff a four-year scholarship at the University that would begin Fall 2020. Defendant Meeks-Rydell ensured Plaintiff that she would find funding to cover Plaintiff's Spring 2019 semester costs and expenses. Still, Plaintiff would have to independently fund the 2019-2020 academic year.

45.     Plaintiff, having never once visited the University, decided to abandon her full scholarship to the University of West Alabama and follow Defendant Meeks-Rydell to the

University based on Defendant Meeks-Rydell's insistence that she needed Plaintiff to join the University Volleyball Team in order to "change the culture" at the University Volleyball Team.

46.     Defendant Meeks-Rydell used physical, mental, and emotional abuse to build a culture of blind obedience and groomed Plaintiff as the face of the Volleyball Team's culture at the University.

47.     Plaintiff endured significant verbal, emotional, physical, and sexual harassment during her time at the University under Defendant Meeks-Rydell.

48.     Plaintiff was subjected to butt pinching and forced hugs by Defendant Meeks-Rydell. Defendant Meeks-Rydell forced Plaintiff to say "I love you."

49.     Shortly after joining the University Volleyball Team, Defendant Meeks-Rydell began to constantly subject Plaintiff to abusive and illegal conduct in violation of the NCAA rules.

50.     Defendant Meeks-Rydell would text Plaintiff late at night, telling her that she was to participate in a "breakfast club" early the following morning. Defendant Meeks-Rydell generally set breakfast clubs between 4:00 a.m. and 5:00 a.m. Breakfast clubs were brutal conditioning drills where Defendants Meeks-Rydell and Chilcoat would require Plaintiff to perform intense conditioning drills beyond physical exhaustion, inflicting severe physical and emotional distress.

51.     For example, Defendant Meeks-Rydell forced Plaintiff to perform pencil rolls across the gym floor during one breakfast club. Defendant Meeks-Rydell forced Plaintiff to perform this brutal maneuver repetitively. Plaintiff developed injuries to her forearms, shins, and elbows.

52.     In addition to the intense physical abuse, Defendant Meeks-Rydell verbally threatened Plaintiff that Defendant Meeks-Rydell would ensure that the next breakfast club would result in members of the Volleyball Team being hospitalized.

53.     Plaintiff met with the coaching staff regarding Defendant Meeks-Rydell's excessive physical punishments and breakfast clubs, but in each meeting, her concerns were disregarded by Defendants.

54.     Defendant Meeks-Rydell routinely punished Plaintiff for the mistakes of others by forcing Plaintiff to engage in breakfast clubs and other excessive physical punishments, such as when other members of the Volleyball Team did not have the grades required by Defendant Meeks-Rydell or broke Defendant Meeks-Rydell's rules relating to social media.

55.     Plaintiff met with the coaching staff regarding Defendant Meeks-Rydell's abusive coaching tactics.  In this meeting, Plaintiff was told that Defendant Meeks-Rydell would not change her abusive methods.

56.     Defendant Meeks-Rydell informed Plaintiff that, in order to do what it takes to win, Defendant Meeks-Rydell would need to make Plaintiff feel isolated and "on an island" among her teammates, rather than part of a cohesive unit.

57.     Defendant Meeks-Rydell further emotionally abused Plaintiff by intentionally isolating Plaintiff from her teammates via conduct such as praising Plaintiff in front of teammates as being the ideal teammate only to ridicule and punish Plaintiff when away from other Team members.

58.     Defendant Meeks-Rydell further isolated Plaintiff by psychologically cutting Plaintiff off from her family and friends, routinely instructing Plaintiff not to discuss anything relating to the Volleyball Team with Plaintiff's family or friends.

59.     Defendant Meeks-Rydell was confident in the effectiveness of her psychologically abusive regime that included Plaintiff that she admitted to Plaintiff and Team members that her conduct could get her into trouble.

60.     Plaintiff and her teammate met with Defendant Meeks-Rydell and while meeting, discussed an article wherein former Ohio Dominican Coach Jennifer Fekpe allegedly abused her players. After reading the article, Meeks-Rydell instructed Plaintiff that Plaintiff and the Volleyball Team could get her into trouble for the same things.

61.     Defendant Meeks-Rydell subjected Plaintiff to further distress when Meeks-Rydell asked Plaintiff to lie and "cover for" Defendant Meeks-Rydell if Plaintiff was questioned by anyone regarding an incident where Defendant Meeks-Rydell struck another Team member, Rachel DeMarcus.

62.     As a result of Defendant Meeks-Rydell's abusive conduct, Plaintiff suffered extreme physical, mental, and emotional distress.

63.     Throughout Plaintiff's term with the Volleyball Team, she suffered daily from anxiety and depression due to the Defendant' wrongful conduct, physically manifesting in the form of Plaintiff losing over twenty-five pounds in less than a year.

64.     Defendant Meeks-Rydell subjected Plaintiff to persistent and wrongful conduct, which resulted in mental, emotional, and physical injury, eventually forcing Plaintiff to leave the University and leave the Volleyball Team.

65.     Plaintiff left the University on May 7, 2020.

IV. **THE UNIVERSITY FAILED TO PROTECT PLAINTIFF AFTER BECOMING AWARE OF DEFENDANT MEEKS-RYDELL'S ABUSE**

66.     Based on information and belief, Defendant Meeks-Rydell had a reputation for instilling a pattern and practice of abuse and/or sexually harassing conduct at her previous jobs, including while employed as Head Coach at the University of West Alabama.

67.     University knew or should have known that Defendant Meeks-Rydell had a history of engaging in the physical, mental and/or emotional abuse of college athletes. Despite said constructive and/or actual knowledge, Defendants recklessly and/or with reckless indifference hired Defendant Meeks-Rydell and placed Plaintiff in danger's path.

68.     Additionally, during the entirety of her time at the University, Defendant Meeks-Rydell's inappropriate and abusive conduct frequently and consistently occurred in the physical presence of the other coaches and staff, including but not limited to, Defendants Chilcoat and Gandolfo.

69.     According to information and belief, parents of the Team members contacted University Director of Athletics Defendant Erdmann directly and informed him of Defendant Meeks-Rydell's inappropriate conduct as early as February of 2019, less than three months from her date of hire.

70.     Defendant Erdmann possessed actual or constructive knowledge of Defendant Meeks-Rydell's abuse and inappropriate conduct and failed to take action, condoned, ratified and/or encouraged the wrongful and illegal conduct.

71.     Defendant Erdmann was one of the appropriate individuals who was required to take preventative and/or responsive action to protect the Team members and Plaintiff, and he failed to take action.

72.     According to information and belief, Defendant Frisbey had knowledge of Defendant Meeks-Rydell's abuse through direct observation, from conversations with Team members and their parents, and through conversations with Defendant Meeks-Rydell.

73.     Defendant Frisbey was one of the appropriate individuals who was required to take preventative and/or responsive action to protect Team members and Plaintiff and failed to take such action.

74.     According to information and belief, Defendant Frisbey actively assisted in perpetuating, condoning and/or encouraging the abuse Plaintiff suffered as a result of the wrongful and illegal conduct of Defendant Meeks-Rydell.

75.     According to information and belief, in early December 2020, Defendant Erdmann and Defendant Frisbey met with parents of Team members about Defendant Meeks-Rydell's abusive coaching tactics at the University.

76.     Assistant Coaches, including Defendants Chilcoat and Gandolfo, were physically present during and directly aware of the physically abusive pinching of the buttocks, forced hugs, and breakfast clubs, as well as the emotionally manipulative and abusive verbal harassment such as forcing Plaintiff to say "I love you" to Defendant Meeks-Rydell.

77.     Defendant University was also constructively on notice and aware of the illegal breakfast clubs through their strength and conditioning coaches Callye Williams, Dew Spicher, and Christina Lodato-Garton.

78.     Defendants Chilcoat and Gandolfo were two of the appropriate individuals who were required to take preventative and/or responsive action to protect Plaintiff.

79.     In spite of their knowledge, Defendants Chilcoat and Gandolfo failed to take any action to protect Plaintiff after becoming aware of Defendant Meeks-Rydell's abuse.

80.     Defendants Chilcoat and Gandolfo actively perpetuated and participated in the wrongful and illegal conduct of Defendant Meeks-Rydell against Plaintiff.

81.     Defendant Moore had actual and/or constructive knowledge of the wrongful and illegal acts of Meeks-Rydell. Defendant Moore met with Team members and coaches regarding Meeks-Rydell's wrongful and illegal conduct.

82.     Defendant Moore was one of the appropriate individuals who was required to take preventative and/or responsive action to protect Plaintiff and failed to take such action.

## CAUSES OF ACTION

### COUNT 1
### [Violation of Title IX against Defendant University]

83.     Paragraphs 1 through 82 are incorporated herein as if set forth in full.

84.     Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a), provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." The University of South Alabama cannot dispute that it was at the relevant times hereto, and continues to be, a recipient to Federal financial assistance, subject to Title IX. Sexual harassment of students is one form of discrimination on the basis of sex prohibited by Title IX. *See Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999).

85.     To prevail in a teacher-on-student harassment claim, the plaintiff must be able to 1) identify a person with "authority to take corrective measures in response to actual notice of sexual harassment," 2) demonstrate that the notice was "sufficient to alert the school official of the  possibility of the Title IX plaintiff's harassment," and 3) show that the authority figure acted with deliberate indifference to the notice of harassment. *J.F.K. v. Troup Cty. Sch. Dist.*, 678 F.3d 1254, 1255-56 (11th Cir. 2012) citing *Doe v. School Bd. Of Broward County, Fla*, 604 F.3d 1248,

1254 (11th Cir. 2010); *Hurt v. Shelby Cnty. Bd. of Educ.*, 198 F. Supp. 3d 1293, 1317 (N.D. Ala. 2016). Plaintiff can satisfy all of these inquiries.

86.     Defendant University is an educational institution, a recipient of federal funds, and is subject to private causes of action under Title IX.

87.     Defendant University had knowledge of extensive, offensive, and perversive gender-specific abuse and harassing conduct, which was directed at Plaintiff, and which was based on her sex, in violation of Title IX, 20 U.S.C. § 1681, *et seq.* The omissions and/or commissions by Defendant University were both subjectively and objectively unreasonable and resulted in harm to, and the interference with and denial of educational and athletic opportunity of Plaintiff.

88.     Defendant Meeks-Rydell, who was the head volleyball coach, in a position of authority over Plaintiff, and who had daily contact with Plaintiff, intentionally and repeatedly harassed, physically assaulted, and violated Plaintiff during her tenure at the University, including by subjecting her to gender-specific harassment and by subjecting her to general, pervasive, and persistent harassment, including unwanted touching.

89.     The abuse and harassment Plaintiff experienced was unwelcome and was sufficiently severe, pervasive, and objectively offensive so as to routinely and systematically deprive Plaintiff of equal access to educational activities and programs. Indeed, as illustrated by some of the interactions between Meeks-Rydell and Plaintiff, Defendant's conduct was objectively outrageous, systematic and severe.

90.     The harassment was so severe, pervasive, and objectively offensive that it barred Plaintiff access to the education and activities to which she was entitled while attending the University.

91.     Defendant University – through University officials and specifically through Defendants Erdmann, Frisbey, Moore, Chilcoat, and Gandolfo – had actual knowledge of the harassment and misconduct by Defendant Meeks-Rydell toward Plaintiff.

92.     Defendant University – as well as Defendants Erdmann, Frisbey, Moore, Chilcoat, and Gandolfo, who were appropriate persons for the purposes of notice under Title IX – was on actual notice of the wrongful and illegal conduct of Defendant.

93.     Defendants Erdmann, Frisbey, Moore, Chilcoat, Gandolfo, and the University had authority to initiate corrective action to stop Defendant Meeks-Rydell's unlawful conduct to prevent the continued and repetitive harassment of Plaintiff based on her gender.

94.     Defendant University had the authority to institute corrective measures to remedy the willful violations of Title IX. However, they failed to undertake such actions and instead acted with deliberate indifference to these violations. The University failed to take disciplinary or remedial action against Defendant Meeks-Rydell.

95.     As a result of the above actions by Defendants, Plaintiff suffered physical, emotional, mental, and financial damages, and continue to so suffer.

**WHEREFORE**, the premises considered, Plaintiff demands judgment against the Defendants in an amount greater than the minimum jurisdictional limits of this Court for damages, costs, and such other and proper relief as this Court deems appropriate.

## COUNT II
### 42 U.S.C. § 1983
### [Violation of Substantive Due Process
### against Defendants University, Meeks-Rydell, Erdmann,
### Frisbey, Moore, Chilcoat, and Gandolfo]

96.     Paragraphs 1 through 95 are incorporated herein as if set forth in full.

97.    Plaintiff has a liberty interest in her bodily integrity, which is protected by the Due Process Clause of the Fourteenth Amendment.[4]

98.    Defendant University denied Plaintiff's Substantive Due Process Rights by hiring Defendant Meeks-Rydell while having constructive and/or actual knowledge of her wrongful and illegal conduct at prior institution; and by failing to protect Plaintiff from harassment and sexual assault and through participation in an incompetent scheme whereby Plaintiff was left alone and unprotected in compromising situations with Defendant Meeks-Rydell, whereby Defendant Meeks-Rydell could take advantage of her position of power and authority over Plaintiff and harass and assault Plaintiff with impunity.

99.    Defendant Meeks-Rydell's conduct directly and unreasonably interfered with Plaintiff's education and participation in the women's Volleyball Team at the University and created an intimidating, hostile and offensive environment that affected Plaintiff's psychological and physical well-being and deprived her of the rights guaranteed to Plaintiff under the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

100.    Defendant University demonstrated deliberate indifference toward Plaintiff's constitutional rights by failing to protect Plaintiff from the known and continuous abusive conduct to which Plaintiff was subjected to by Defendant Meeks-Rydell while on the University campus, University transportation, and University sponsored events.

101.    Due to Defendant University's deliberate indifference, Defendant University proximately caused the violation of Plaintiff's rights.

---

[4] *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 2267, 138 L. Ed. 2d 772 (1997) (citing *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

102.    As a direct result of the failure of Defendant University to intervene, report or prohibit the inappropriate and harassing conduct of Defendant Meeks-Rydell, Plaintiff has been deprived of the rights guaranteed to her under the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

103.    At all relevant times, Defendant Meeks-Rydell was a state actor as an employee of the University, a government entity and public university located in Mobile, Alabama, where she served as the Head Coach for the Women's Volleyball Team.

104.    At all relevant times, Meeks-Rydell, while acting in her capacity as a state actor, maintained a pattern and practice of blatant abusive behavior, including sexual harassment and assault, physical assault, and emotional assault towards Plaintiff while on the University campus, on University transportation, and at University sponsored events, in deliberate disregard for Plaintiff's constitutional rights, such as Plaintiff's right to bodily integrity.

105.    Defendant Meeks-Rydell knowingly violated Plaintiff's constitutional rights by sexually and physically assaulting Plaintiff and by creating an intimidating, hostile and offensive environment that affected Plaintiff's psychological and physical well-being.

106.    As a direct result of Defendant Meeks-Rydell's wrongful and illegal conduct, Plaintiff has been deprived of the rights guaranteed to her under the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

107.    Defendants Erdmann, Frisbey, Moore, Chilcoat, Gandolfo, and the University had actual knowledge of Defendant Meeks-Rydell's continuous abusive conduct towards Plaintiff and were appropriate individuals who were required to take preventative and/or responsive action to protect Plaintiff. By refusing to address the wrongful and illegal conduct, and by failing to take any preventative and/or responsive action to protect Plaintiff, Defendants demonstrated deliberate

indifference toward Plaintiff's constitutional rights and thereby proximately caused the violation of those rights.

108.    As a direct result of the failure of Defendants Erdmann, Frisbey, Moore, Chilcoat, Gandolfo, and the University to act, intervene, report or prohibit the wrongful and illegal conduct of Defendant Meeks-Rydell, Plaintiff has been deprived of the rights guaranteed to her under the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

109.    As a result of the above actions by Defendants, Plaintiff suffered physical, emotional, mental, and financial damages, and continues to suffer.

 **WHEREFORE**, the premises considered, Plaintiff demands judgment against the Defendants in an amount greater than the minimum jurisdictional limits of this Court for compensatory damages, punitive damages, costs, and such other and proper relief as this Court deems appropriate.

## COUNT III
### Negligent/Wanton/Reckless Hiring, Retention, and Supervision
### in Violation of Alabama Law
### [Against Defendant University]

110.    Paragraphs 1 through 109 are incorporated herein as if set forth in full.

111.    At all times relevant to this action, Defendants University and Meeks-Rydell engaged in an employer-employee relationship.

112.    As alleged above, Defendant Meeks-Rydell had a history of similar, outrageous and harassing wrongful and illegal conduct at while previously employed by another institution.

113.    Defendant University failed to conduct a reasonably prudent investigation of Meeks-Rydell's employment and/or personal background prior to hiring her in December of 2018. The University has a duty to exercise reasonable care for the safety and wellbeing of its students, and in fulfilling this duty, it was obligated to conduct a thorough investigation before installing

Meeks-Rydell in a position of tremendous authority – especially in light of the power that Meeks-Rydell would wield over Plaintiff and other young women's daily lives and academic and athletic opportunities.[5] But for the failure to properly investigate Meeks-Rydell, Plaintiff would not have suffered injury and damage as a result of Meeks-Rydell's wrongful and illegal conduct.

114.    University was negligent, reckless, wanton, and/or recklessly indifferent in its hiring of Defendant Meeks-Rydell. As set forth above, the University knew or should have known of Defendant Meeks-Rydell's propensity for tortious conduct, including without limitation harassment, sexual harassment, and physical assault of students.

115.    University was also negligent, reckless, wanton, and/or recklessly indifferent in failing to adequately supervise Defendant Meeks-Rydell during her tenure as Head Coach.

116.    University was negligent, reckless, wanton, and/or recklessly indifferent in retaining Defendant Meeks-Rydell after being put on notice of the severe, offensive, pervasive, and discriminatory abuse and harassment of Plaintiff.

117.    Defendant Meeks-Rydell's repetitive and severe wrongful and illegal conduct rendered her unfit to hold the position of Coach and created a danger of imminent harm to Plaintiff and the other members of the University's Volleyball Team.

118.    Notwithstanding the University's actual knowledge of Defendant Meeks-Rydell's outrageous conduct and unfitness for the position of Head Coach, the University retained

---

[5] *See, e.g., Massey v. Smithway Motor Xpress, Inc., et al.*, No. 7:08-cv-02025-LSC * 14 (N.D.A.L. Jan. 27, 2010), "In the context of a negligent or wanton hiring, retention, and supervision claim, 'an employer has a duty to exercise reasonable care for the safety of his customers, patrons, or other invitees, and in fulfilling this duty he must use due care to avoid the selection or retention of an employee whom he knows or should know is a person unworthy, by habits, temperament, or nature, to deal with [those persons].'" (quoting *Brown v. Vanity Fair Mills, Inc.*, 291 Ala. 80, 82 (Ala. 1973)).

Defendant Meeks-Rydell and failed to take immediate and appropriate action to protect the female members of the Volleyball Team – ostensibly focused upon securing a winning season.

119.    Defendant Meeks-Rydell was unequivocally acting in the line and scope of her employment when she engaged in her wrongful and illegal conduct, as set forth herein, and her actions were so closely connected with her duties and so fairly incidental to her employment that they should be regarded as carrying out the objectives of her position on the University staff.

120.    As a direct and proximate cause of the University's negligent, reckless, wanton, and/or recklessly indifferent hiring, supervision, and retention, Plaintiff suffered damages, including but not limited to emotional trauma, mental anguish and suffering, impairment of reputation, personal humiliation, embarrassment, anxiety, economic loss and alienation both academically and socially from school activities.

121.    Defendants' conduct has been continuous in nature, thereby constituting a continuing tort through that date, and as alleged herein, includes, according to information and belief, continued efforts to conceal the extent and degree of the Defendants' wrongful conduct.

122.    As a result of the above actions by Defendants, Plaintiff suffered physical, emotional, mental, and financial damages, and continue to so suffer.

**WHEREFORE**, the premises considered, Plaintiff demands judgment against the Defendants in an amount greater than the minimum jurisdictional limits of this Court for compensatory damages, punitive damages, costs, and such other and proper relief as this Court deems appropriate.

### COUNT IV
**Assault and Battery in Violation of Alabama Law**
**[Against all Defendants]**

123.    As paragraphs 1 through 122 are incorporated herein as if set forth in full.

124.    A teacher or school administrator is liable for assault and battery where the conduct is in contravention of the school's policies and where the agent acted with malice.

125.    As described above, Plaintiff was assaulted and battered by Defendant Meeks-Rydell in all ways aforementioned, including, but not limited to, all of the above-described physical touching.

126.    Defendant Meeks-Rydell's intentional assault and battery was in contravention of the University's regulations, rules, and/or policies, and was without just cause or excuse.

127.    Defendants University, Erdmann, Frisbey, Moore, Chilcoat, and Gandolfo countenanced and ratified the assault and battery of Plaintiff by Defendant Meeks-Rydell when they failed and refused to take any reasonable steps to protect Plaintiff from the continued and persistent assault and battery. Accordingly, Defendants University, Erdmann, Frisbey, Moore, Chilcoat, and Gandolfo are responsible for the assault and battery upon Plaintiff.

128.    As a proximate consequence thereof, Plaintiff was caused to suffer damages as enumerated herein.

129.    The actions and/or omissions of Defendants in harming Plaintiff as set out above were willful and wanton. Namely, Defendant Meeks-Rydell unlawfully touched Plaintiff consistently over an extended amount of time, while wielding the power of her office. Such conduct was willful and wanton. Similarly, Defendants Chilcoat and Gandolfo willfully and wantonly observed the wrongful touching, assault, and battery of Plaintiff and willfully and wantonly failed to take action and failed to report or rectify the wrongful conduct.

130.    As a result of the above actions by Defendants, Plaintiff suffered physical, emotional, mental, and financial damages, and continue to suffer.

**WHEREFORE**, the premises considered, Plaintiff demands judgment against the Defendants in an amount greater than the minimum jurisdictional limits of this Court for compensatory damages, punitive damages, costs, and such other and proper relief as this Court deems appropriate.

**COUNT V**
**Invasion of Privacy in Violation of Alabama Law**
**[Against all Defendants]**

131.     Paragraphs 1 through 130 are incorporated herein as if set forth in full.

132.     For an invasion of privacy claim in Alabama, there must be a prying or intrusion and the intrusion must be offensive or objectionable to a reasonable person. The thing into which there is intrusion or prying must be and be entitled to be, private. *Busby v. Truwall Systems Corp.*, 551 So. 2d 322, 323-24 (Ala. 1989).

133.     The actions of Defendant Meeks-Rydell described above constituted an invasion of privacy upon Plaintiff's physical solitude and/or seclusion and did so in violation of ordinary decency, imposing emotional distress upon Plaintiff.

134.     Specifically, Defendant Meeks-Rydell invaded Plaintiff's privacy by forcing unwanted physical contact with repeatedly and consistently.

135.     Defendants University, Erdmann, Frisbey, and Moore countenanced and ratified Defendant Meeks-Rydell's conduct when they failed and refused to take any reasonable steps to protect Plaintiff from the invasion of privacy. Accordingly, Defendants University, Erdmann, Frisbey, and Moore are responsible for the invasion of privacy upon Plaintiff. Similarly, Defendants Chilcoat and Gandolfo observed the invasions of privacy of Plaintiff and willfully and wantonly failed to take action and failed to report or rectify the wrongful conduct.

136.    As a result of the above actions by Defendants, Plaintiff suffered physical, emotional, mental, and financial damages, and continue to so suffer.

**WHEREFORE**, the premises considered, Plaintiff demands judgment against the Defendants in an amount greater than the minimum jurisdictional limits of this Court for compensatory damages, punitive damages, costs, and such other and proper relief as this Court deems appropriate.

**COUNT VI**
**Intentional Infliction of Emotional Distress (Outrage)**
**in Violation of Alabama Law**
**[Against all Defendants]**

137.    Paragraphs 1 through 136 are incorporated herein as if set forth in full.

138.    To succeed on an action based on outrage, a plaintiff must prove (1) the Defendants intended to inflict emotional distress, or know or should have know that emotional distress would likely result from their conduct; (2) the Defendants' conduct was extreme and outrageous; (3) the Defendants' actions caused her distress; and (4) the distress was severe.

139.    Defendants knew or should have known that Defendant Meeks-Rydell's physical, emotional, and psychological abuse of Plaintiff, would likely result in emotional distress.

140.    Defendants Erdmann, Frisbey, Moore, Chilcoat, and Gandolfo's deliberate indifference to Defendant Meeks-Rydell's continuous extreme conduct, including but not limited to sexual assault, physical assault, emotional and psychological abuse, itself constitutes extreme and outrageous conduct.

141.    Defendants' extremely and outrageously reckless, intentional, and egregious conduct was known or should have been known to result in emotional distress.

142.    As a result of Defendants' conduct, Plaintiff suffered severe emotional distress.

143.    Given the Defendants' wrongful and illegal conduct, and the ramifications of Defendants' conduct on Plaintiff's lives, the damage and emotional distress on Plaintiff is so severe that no reasonable person could be expected to endure it.

144.    As a result of the above actions by Defendants, Plaintiff suffered physical, emotional, mental, and financial damages, and continue to so suffer.

**WHEREFORE**, the premises considered, Plaintiff demands judgment against the Defendants in an amount greater than the minimum jurisdictional limits of this Court for compensatory damages, punitive damages, costs, and such other and proper relief as this Court deems appropriate.

### COUNT VII
### Breach of Contract
### [Against Defendant University]

145.    Paragraphs 1 through 144 are incorporated herein as if set forth in full.

146.    Plaintiff and the University are parties to a contract wherein Plaintiff committed to play for the University Volleyball Team in exchange for a tuition-free higher education, an adequate and safe living environment, and an adequate and safe educational environment.

147.    Instead, Plaintiff was subjected to frequent and severe physical, emotional and mental abuse, adequate and safe living and/or educational environment the University was obligated to provide for Plaintiff.

148.    The University breached their contracts with Plaintiff, among other ways, by failing to adequately prevent Plaintiff from the dangerous and harassing conditions on campus that Defendant University allowed to metastasize in light of their knowledge of Defendant Meeks-Rydell's continuous abuse and harassment of Plaintiff.

149.    Defendant University breached these contracts with Plaintiff by failing to provide an adequately safe living and educational environment for Plaintiff.

150.    As a result of these breaches, Defendant Meeks-Rydell's harassment of Plaintiff was allowed to continue and go unpunished.

151.    As a result of these breaches, Plaintiff suffered the loss of the support of Defendant University in important matters affecting her education, and Plaintiff was humiliated in the face of her harasser.

152.    Specifically, Plaintiff was forced to transfer– causing her to wrongfully incur significant financial harm.

**WHEREFORE**, the premises considered, Plaintiff demands judgment against the Defendants in an amount greater than the minimum jurisdictional limits of this Court for compensatory damages, punitive damages, costs, and such other and proper relief as this Court deems appropriate.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully request that this Honorable Court enter an Order which will:

A.    Declare the conduct engaged in by the Defendants to be in violation of Plaintiff's rights under federal and Alabama law;

B.    Award Plaintiff compensatory damages against the Defendants in an amount that will fully compensate Plaintiff for all she suffered and continue to suffer in the future as a direct and/or proximate result of the statutory and common law violations as set forth herein;

C.    Enter a judgment against Defendants for such punitive damages as will properly punish them for the constitutional, statutory, and common law violations perpetrated against

Plaintiff as alleged herein, in an amount that will serve as a deterrent to Defendants and others similarly situated from engaging in similar conduct in the future;

       D.    Award Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law;

       E.    Award Plaintiff costs and attorneys' fees;

       F.    Award statutory damages pursuant to 42 U.S.C. § 1983;

       G.    Assume continuing and indefinite jurisdiction to ensure compliance with the terms of the Orders requested herein; and

       H.    Award Plaintiff such other and further relief, including equitable relief, that this Court deems just and proper.

Dated: May 5, 2022

 

                         */s/ Diandra S. Debrosse Zimmermann*
                         Diandra S. Debrosse Zimmerman
                         (ASB-2956-N76D)
                         Eli J. Hare
                         (ASB-1024-T20Q)
                         Allison R. Griffith
                         (ASB-2504-L11J)
                         **DICELLO LEVITT GUTZLER LLC**
                         420 20th Street North, Suite 2525
                         Birmingham, Alabama 35203
                         (205) 855-5700
                         fu@dicellolevitt.com
                         ehare@dicellolevitt.com
                         aowens@dicellolevitt.com

                         Kenneth P. Abbarno
                         *(Pro Hac Vice application forthcoming)*
                         Justin J. Hawal
                         *(Pro Hac Vice application forthcoming)*
                         **DICELLO LEVITT GUTZLER LLC**
                         Western Reserve Law Building
                         7556 Mentor Avenue
                         Mentor, Ohio 44060
                         (440) 953-8888

kabbarno@dicellolevitt.com
jhawal@dicellolevitt.com

*Counsel for Plaintiff*