IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CASSADI COLBERT,                    *
                                    *
     Plaintiff,                     *
                                    *
vs.                                 *   CIVIL ACTION NO. 22-00184-KD-B
                                    *
UNIVERSITY OF SOUTH ALABAMA,        *
*et al.*,                           *
                                    *
     Defendants.                    *

<u>REPORT AND RECOMMENDATION</u>

This action is before the Court on Defendants the University of South Alabama ("University" or "USA"), Joel Erdmann, Jinni Frisbey, Chris Moore, Rob Chilcoat and Patricia Gandolfo's (collectively referenced as "University Defendants") Motion to Dismiss Plaintiff Cassadi Colbert's Amended Complaint or Motion for Summary Judgment(Doc. 26) and Defendant Alexis Meeks-Rydell's Motion to Dismiss Plaintiff's Amended Complaint or Motion for Summary Judgment. (Doc. 29). The motions, which have been fully briefed, are before the undersigned Magistrate Judge on referral pursuant to 28 U.S.C. §636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(5). Upon consideration of all matters presented, the undersigned hereby RECOMMNEDS that the motions to dismiss be granted in part, that the claims against USA be dismissed with prejudice, that the federal claims against the individual University Defendants and Alexis Meeks-Rydell be dismissed with prejudice, and that the Court

decline to exercise supplemental jurisdiction over Plaintiff Cassadi Colbert's remaining state law claims.

I.    **PROCEDURAL BACKGROUND**

Plaintiff Cassadi Colbert (hereinafter "Plaintiff" or "Colbert"), a former USA volleyball player, is suing the University and several of its current and former employees based on an alleged "pattern and practice of blatant sexual harassment" by Defendant Meeks-Rydell during her 2019-2020 tenure as the Women's Volleyball coach at USA. (Doc. 1). Plaintiff's operative pleading before the Court is her Amended Complaint (doc. 24), which was filed after the Court determined that her original complaint was an impermissible shotgun pleading[1]. (Doc. 20).

After Plaintiff filed her amended complaint, the Court determined that this action is closely related to a previously filed case, namely DeMarcus v. Univ. of S. Alabama, No. CV 21-00380-KD-B, 2023 WL 2656749, at *1 (S.D. Ala. Mar. 27, 2023), which involved substantially similar allegations by current and former members of the USA Volleyball team against Defendant Meeks-Rydell

---

[1] The University Defendants and Defendant Meeks-Rydell filed motions to dismiss and motions for summary judgment in response to Plaintiff's initial complaint. (Docs. 11, 12). After briefing, the Court, in an order dated March 29, 2023, determined that Plaintiff's original complaint was a shotgun pleading, and directed Plaintiff to file an amended complaint that remedied the deficiencies set forth in the Court's order.(Doc. 20).

and the University Defendants[2]. Upon consideration of the motions to dismiss filed by the Defendants in the Demarcus action, the Court determined that the Demarcus plaintiffs failed to state federal claims against the Defendants; thus, their federal claims were dismissed and the Court declined to exercise supplemental jurisdiction over their state law claims[3]. DeMarcus v. Univ. of S. Alabama, No. CV 21-00380-KD-B, (Doc. 74).

In the instant action, Plaintiff alleges that while Defendant Meeks-Rydell was employed as the Women's Volleyball coach at the University of West Alabama, she specifically recruited Plaintiff and promised her a four-year scholarship at USA that would begin in the Fall of 2020. (Doc. 24 at 9). Plaintiff alleges that she abandoned her scholarship at the University of West Alabama and transferred to USA in the Spring of 2019 in order to follow Meeks-Rydell, who had become USA's Women's Volleyball coach. (Id. at 9-10).

Plaintiff asserts that during Meeks-Rydell's 2019-2020 tenure as the head Women's Volleyball coach at USA, she engaged in sexual

---

[2] In accordance with the Court's first-filed policy, the instant action was reassigned to the same district judge and magistrate judge as the first-filed case. (Doc. 22).

[3] The Demarcus action is currently on appeal. DeMarcus v. Univ. of S. Alabama, No. CV 21-00380-KD-B, (Doc. 76).

harassment and other physical and emotional abuse of the players, including herself, and that the University Defendants were aware of the alleged abuse and failed to take action to prevent it. (Id. at 8-9). According to Plaintiff, Meeks-Rydell created a "hostile and toxic environment" for Plaintiff and the team by telling the team they caused her to contract cancer, that they caused her marital problems, and that they would cause her to lose her job. (Id. at 7). Plaintiff further alleges that Meeks-Rydell imposed punishments in violation of NCAA rules, such as morning breakfast clubs which consisted of 4:00 a.m. practice drills that would continue until players vomited, passed out or cried due to inability to continue. (Id. at 7-8). Plaintiff also alleges that Meeks-Rydell would abuse and belittle her, that she would force Plaintiff to play through injuries, and that Meeks-Rydell engaged in conduct rising to the level of sexual harassment by touching Plaintiff and other players inappropriately, including:

1. Pinching players' butts as they exited the bus whenever the team travelled for games;

2. Forcing players, including Plaintiff, to hug her and tell her that they loved her;

3. Forcing Plaintiff to constantly tell her that she loved her in person;

4. Punishing Plaintiff by subjecting her to emotional and/or verbal abuse or by making her participate in intense physical

punishment such as breakfast clubs if Coach Meeks-Rydell perceived that she was not getting enough positive attention from her players and Plaintiff individually. (Id. at 7-8).

Plaintiff further alleges that sometimes at practice drills, Meeks-Rydell forced Plaintiff to perform pencil rolls across the gym floor, thereby causing her to develop injuries on her forearms, shins, and elbows. (Id. at 10). Plaintiff also alleges that as the head Volleyball coach, Meeks-Rydell had full authority over the team, including controlling team membership, positions and playing time, as well as having the power to grant or withhold lucurative scholarships.(Id. at 5).   According to Plaintiff, Meeks-Ryell created a "hostile and toxic environment" and engaged in a "pattern and practice of physical, verbal and psychological abuse" to the team and Plaintiff individually."(Id. at 7).   Plaintiff also alleges that Meeks-Rydell's abusive behavior caused her to lose twenty-five pounds in less than a year, and forced her to leave the team and USA on May 7, 2020.(Id. at 12).   She further alleges that Meeks-Rydell resigned her position on February 26, 2021. (Id. at 3).

Plaintiff also asserts that several university officials including Defendant Joel Erdmann, who served as USA Athletic Director and as Coach Meeks-Rydell's direct supervisor, Defendant Jinni Frisbey, who served as USA Associate Athletic Director and as Coach Meeks-Rydell's director supervisor, Defendant Chris Moore,

who served as  USA Associate Athletic Director and as Coach Meeks-Rydell's direct supervisor, Defendant Rob Chilcoat, who served as USA Assistant Coach of the volleyball team, and Defendant Patricia Galdolf, who served as USA Assistant Coach of the volleyball team, all had direct knowledge of Coach Meeks-Rydell's abusive conduct, the authority to take corrective action, and failed to do so.(Id. at 4, 8)

Plaintiff contends that the University had knowledge of Meeks-Rydell's reputation and history of misconduct based on her prior employment at the University of West Alabama, and that due to the inappropriate conduct of the previous USA coaching staff, Senior Athletic Director Frisbey promised members of the current Volleyball team that she would supervise the transition of the Meeks-Rydell coaching resume to ensure that no inappropriate conduct would take place. (Id. at 5, 13). Additionally, Plaintiff contends that parents of team members contacted Defendant Erdman, the USA Director of Athletics, and informed him of Meeks-Rydell's inappropriate conduct as early as February of 2019, less than three months after her hire. She further alleges that Defendants Chilcoat and Gandolfo were physically present during Meeks-Rydell's abusive conduct including forced hugs, "I love yous" and pinching and that they actively perpetuated and  participated in Meeks-Rydell's misconduct. (Id. at 14). She also alleges that in early December

2020, Defendants Erdmann and Frisbey met with parents and team members about Meeks-Rydell's abusive tactics. (<u>Id</u>.).

Based on the above-referenced factual allegations, Plaintiff asserts the following claims in her amended complaint:

Count One: a Title IX claim against USA;

Count Two: a Section 1983 Substantive Due Process claim against Defendants USA, Meeks-Rydell, Erdmann, Frisbey, Moore, Chilcoat and Gandolfo,

Count Three: a negligent/wanton/reckless hiring, retention and supervision claim against USA;

Count Four: an assault and battery claim against Meeks-Rydell;

Count 5: an assault and battery claim against USA;

Count 6: an invasion of privacy claim against Meeks-Rydell;

Count 7: an invasion of privacy claim against USA;

Count 8: an outrage claim against all Defendants;

Count 9: a breach of contract claim against USA.

### a. Defendants' Motions to Dismiss

Currently pending before the Court is the USA Defendants' motion to dismiss Plaintiff's amended complaint or in the alternative motion for summary judgment, and Defendant Meeks-Rydell's motion to dismiss Plaintiff's amended complaint or in the alternative motion for summary judgment. (Docs. 26, 29).   In the motion filed by the University Defendants, they argue that as a public university, USA is immune from all claims except Title IX.

(Doc. 26 at 6).  They also argue that Plaintiff's Title IX claim should be dismissed because Plaintiff's conclusory allegations fail to plausibly allege that an appropriate person at the University had actual notice of any alleged sexual harassment or discrimination in violation of Title IX by Meeks-Rydell, and failed to take corrective action.  (Id. at 17).  They further allege that Plaintiff has failed to allege facts sufficient to support a sustantive due process claim, and that Plaintiff's claims are barred by the statute of limitations. (Id. at 17, 18). The University Defendants further assert that there are no allegations that the University Defendants engaged in sexually harassing conduct themselves and that they cannot be held liable for Meeks-Rydell's alleged misconduct.   (Id. at 24).

In Coach Meeks-Rydell's motion to dismiss (doc. 29), she argues that Plaintiff's claims for invasion of privacy, intentional infliction of emotional distress, and 1983 substantive due process, are all barred by the two-year statute of limitations. (Id. at 5).  Additionally, Meeks-Rydell argues she is entitled to immunity for the § 1983 violation, and that Plaintiff's conclusory allegations do not support a substantive due process violation. (Id. at 12-14).  Meeks-Rydell also asserts that as coach of the team, she is entitled to state-agent immunity on all of Plaintiff's state law claims (id. at 14), and that Plaintiff has not plausibly

alleged assault and battery, invasion of privacy, or outrage.  (Id. at 16-20).

## II.  **STANDARD OF REVIEW**

Rule 8(a)(b) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L. Ed 929 (2007) (citation omitted). A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted.

To survive a motion to dismiss, the factual allegations must be "plausible" and must be enough to raise a right to relief beyond the speculative level." Id. at 555. See also Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation remarks omitted).  In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the complaint as true, and take them in the light most favorable to the plaintiffs. Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007), but [l]egal

conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted); see also Doe v Samford Univ., 29 F.4th 675, 687-688(11th Cir. 2022)(the plaintiff's allegations that an investigative report contained "prejudicial" and "inflammatory" statements about him are "not entitled to the assumption of truth" because these allegations are "labels" and "[un]supported by factual allegations.") (citations omitted).

When considering motions to dismiss, the Court engages in a two-step approach: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 664). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the

plaintiff would ask the court to infer." Id. (quoting Iqbal, 556 U.S. at 682).

**III. <u>DISCUSSION</u>**

As noted, Plaintiff asserts Title IX, substantive due process and state law claims against Defendant University. She also claims substantive due process and state law violations against Defendants Meeks-Rydell, Erdmann, Frisbey, Moore, Chilcoat, and Gandolfo. The Court will first address Defendants' arguments relating to the federal claims and will then address Plaintiff's remaining state law claims.

**A. Plaintiff's Title IX Claim Against Defendant USA**

The University Defendants contend that Plaintiff's amended complaint does not plausibly allege a Title IX deliberate indifference claim because Plaintiff fails to state an appropriate person at USA who had notice of Coach Meeks-Rydell's alleged sexual harassment. (Doc. 26 at 11). The University Defendants also argue that Plaintiff's Title IX claim is statutorily time-barred. (Id. at 9). Plaintiff responds that Defendants Erdmann, Frisbey, Moore, Chilcoat, and Gandolfo were all appropriate persons who had actual notice of Meeks-Rydell's sexual harassment, and they all responded with deliberate indifference. (Doc. 31). Plaintiff further contends that none of the University Defendants are entitled to qualified immunity because they each had a duty via a special

relationship to protect her from Meeks-Rydell's foreseeable, probable, and recurring pattern of abuse.  (Id.).

"Title IX prohibits sex discrimination by recipients of federal education funding." Jackson v. Birmingham Bd. Of Educ., 544 U.S. 167, 173, 125 S.Ct. 1497, 161 L. ED. 2d 361 (2005).  The statute provides, in pertinent part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a); Sauls v. Pierce Cnty. Sch. Dist., 399 F.3d 1279, 1283 (11th Cir. 2005) (citing 20 U.S.C. § 1681(a)).  The Supreme Court has recognized an implied private right of action under Title IX for cases involving intentional sexual discrimination, and it has held money damages are available in such lawsuits. Franklin v. Gwinnett County Public Schs., 503 U.S. 60, 65, 72-75, 112 S.Ct. 1028, 117 L.Ed. 2d 208(1992).  Among other things, the Court has held that a teacher's sexual harassment of a student constitutes actionable discrimination for the purposes of Title IX for which money damages are available. Id. at 74-76; see also Davis v. DeKalb County School District, 233 F.3d 1367, 1371 (11th Cir. 2000); Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 285, 118 S. Ct. 1989, 141 L. Ed 2d 277 (1998).

The Eleventh Circuit has instructed that the court's analysis in a "teacher on student" discrimination case is governed by Gebser.

In <u>Gebser</u>, the Supreme Court made plain that not all sexual harassment by teachers is sufficient to impose liability on a school district. Because "Title IX is predicated upon notice to an 'appropriate person' and an opportunity to rectify any violation," id. at 290, 118 S.Ct. at 1999(citing 20 U.S. C. § 1682), the Court explained that school districts may not be held liable on a theory of respondeat superior or mere constructive notice, id. at 285, 118 S. Ct. at 1997. Rather, Title IX liability arises only where "an official of the school district, who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct." Id. at 277, 118 S.Ct. at 1993.

Therefore, applying the Gebser framework to the summary judgment context requires three related inquiries. First, the plaintiff must be able to identify an "appropriate person" under Title IX, i.e. a school district official with authority to take corrective measures in response to actual notice of sexual harassment. See Floyd v. Waiters, 171 F.3d 1264, 1264(11th Circuit. 1999). Second, the substance of that actual notice must be sufficient to alert the school official of the possibility of the Title IX plaintiff's harassment. See Gebser, 524 U.S. at 291, 118 S. Ct. at 2000. And finally, the official with such notice must exhibit deliberate indifference to the harassment. See <u>Sauls</u>, 399 F.3d at 1284.

<u>Doe v. Sch. Bd. of Broward County</u>, 604 F.3d 1248, 1254 (11th Cir. 2010); <u>see also</u> <u>J.F.K. v. Troup County</u> <u>School Dist</u>., 678 F.3d 1254, 1255-56 (11th Cir. 2012). Tweaking <u>Broward</u> to account for the difference in the motion to dismiss standard, a plaintiff must plausibly set forth in his or her complaint: (1) the identity of an "appropriate person," i.e. a school official "with the authority to take corrective measures in response to actual notice of sexual harassment"; (2) that the substance of that actual notice was sufficient to alert the school official of the possibility of the

Title IX plaintiff's harassment; and (3) that the school official with such notice exhibited at least deliberate indifference to the harassment.   The Court will address each of these elements in turn.

### 1. "Appropriate Official" for Title IX Purposes

"[A]n "appropriate person" under § 1682 is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination.   Consequently, in cases like this one that does not involve official policy of the recipient entity, we hold that a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." Gebser, 524 U.S. at 290.   The official must be "high enough up the chain-of-command that his acts constitute an official decision by the [educational institution] itself not to remedy the misconduct. Floyd v. Waiters, 171 F.3d 1264 (llth Cir. 1999).

In   Plaintiff's   amended   complaint,   she   contends   that Defendants Erdmann, Frisbey, Moore, Chilcoat and Gandolfo were all "appropriate persons" who were on actual notice of Coach Meeks-Rydell's alleged sexual harassment and abuse and that they responded with deliberate inference.   Plaintiff also argues that the issue of who is an appropriate official for reporting purposes

under Title IX cannot be decided on a motion to dismiss, and cites S.M. v. Sealy Indep. Sch. Dist., 2021 U.S. Dist. Lexis 78311, 2021 WL 599388 (S.D. Tex. Apr. 23, 2021) in support of her assertion.

While it is correct that in S.M. v. Sealy Indep. Sch. Dist., the court observed that the question of who is an appropriate official for reporting purposes under Title IX is fact intensive, the court did not hold that the question could not be resolved on a motion to dismiss. Unlike the instant case, S.M. v. Sealy Indep. Sch. Dist. involved student-on-student harassment, and in that context, the court held that the facts alleged would allow a plausible inference that "the Athletic Director, the coach and the head coach "were appropriate persons" with the power to halt the [student-on-student]abuse." Id. at *17. Similarly, in Kinsman v. Fla. State Univ. Bd. of Trs., 2015 U.S. Dist. Lexis 180599, 2015 WL 11110848, at *2 (N.D. Fla. Aug. 12, 2015), another case cited by Plaintiff, the court found that in the context of student-on-student harassment, that "it is plausible that the facts will show that [the associate athletic director and the head football coach] had enough authority over a member of the football team to take corrective action.")

In her response, Plaintiff also cites Burks v. Bd. of Trs. of Fla. Agric. & Mech. Univ., 505 F. Supp. 3d 1273 (N.D. Fla. Dec. 4, 2020) in support of her assertion that the "appropriate official" inquiry in Title IX cases can only be resolved on summary judgment

15

after the parties have had an opportunity to engage in some discovery. Burks involved alleged coach on student harassment, and the "appropriate official" inquiry came before the court in the summary judgment context. However, there is nothing in the decision that indicates that the court is precluded, at the motion to dismiss stage, from determining whether the plaintiff has alleged facts which allow a plausible inference that the person to whom a report was made was "an appropriate person with the power to halt the abuse." In Burks, the court determined that notice to coaches with less authority than the head coach, who was the alleged harasser, did not constitute actual notice because the plaintiffs failed to show they were in a position to take corrective action with respect to the head coach. Id. at 1280. See also, Weis v. Bd of Trs. of the Fla. Gulf Coast Univ., 2020 U.S. Dist. LEXIS 80701, 2020 WL 2219192 (M.D. Fla. May 7, 2020)(on a motion to dismiss, the court held that where the plaintiff, who alleged sexual harassment by a professor, asserted in her amended complaint that she complained to the professor's department chair, "it is certainly a reasonable inference that a department chair at a university has the authority to take corrective action to end discrimination by one of the department's professors against one of the university's students.")

The undersigned finds that while Plaintiff is entitled, under the motion to dismiss standard, to the benefit of reasonable

inferences from the facts pled, Iqbal, 556 U.S. at 678, merely alleging that Defendants were "appropriate persons" is not sufficient to make it so.  In this case, Plaintiff has alleged, with respect to Defendants Erdmann, Frisbey and Moore, that they served as athletic director and assistant athletic directors respectively and that they had supervisory authority over Meeks-Rydell.  While it may turn out otherwise[4], it is certainly a reasonable inference that an athletic director or assistant athletic director at a university has the authority to take corrective action to end harassment by one of the university's coaches against one of its students.  The same cannot be said with respect to Plaintiff's assertions concerning Defendants Chilcoat and Gandolfo.  Plaintiff asserts that Defendants Chilcoat and Gandolfo were assistant USA volleyball coaches and that Meeks-Rydell was the head volleyball coach.  Given their asserted roles, Plaintiff does not allege, nor can a reasonable inference be drawn that the assistant coaches had the authority to discipline and correct the head coach[5].  See Floyd v. Waiters, 171 F.3d 1264 (11th Cir. 1999)(The official must be "high enough up the chain of

---

[4] The ultimate question of who is an appropriate person is necessarily a fact-based inquiry because officials' roles may vary among universities.  See e.g. Broward, 604 F.3d at 1256.

[5] According to plaintiff, it was Meeks-Rydell, rather than others on staff, who made decisions regarding the team roster, scholarships and playing time. (Doc. 24 at 5).

command that his acts constitute an official decision by the [educational institution] itself not to remedy the misconduct."). Moreover, given Plaintiff's assertion that Chilcoat and Gandolfo were not only present during the abusive conduct, but that they "actively perpetuated and participated" in the illegal conduct, it is not plausible that the alleged perpetrators of the complained of conduct were also the "appropriate persons" for taking corrective action. Accordingly, viewing the facts in the light most favorable to Plaintiff, the Court finds that while Plaintiff has plausibly alleged that Defendants Erdmann, Frisbey and Moore had the authority to institute corrective measures over Meeks-Rydell's alleged misconduct and thus were "appropriate officials" within the meaning of Title IX, she has failed to do so with respect to Defendants Chilcoat and Gandolfo.

## 2. Existence and Substance of Notice

The Court's next inquiry focuses on the existence and substance of the notice received by the "appropriate officials" as private damages are only available where recipients of federal funding have had actual and adequate notice. <u>Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ</u>., 526 U.S. 629, 640-42, 119 S.Ct. 1661, 143 L. Ed. 2d 839 (1999). "There are different ways by which such actual notice may be satisfied." <u>J.F.K. v. Troup County Sch. Dist.,</u> 678 F.3d 1254, 1260 (11th Cir. 2012). While notice of sexual harassment provided by or on behalf of the

18

specific plaintiff asserting a Title IX claim would be sufficient, it is not a necessary requirement. "Actual notice" of a Title IX plaintiff's harassment need not be provided by the plaintiff herself. Broward, 604 F. 3d at 1257 (citations omitted). Indeed, "no circuit has interpreted [the] actual notice requirement so as to require notice of the prior harassment of the Title IX plaintiff herself." Id. (emphasis in original)(citations omitted); see also Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp., 551 F. 3d 599, 605-06 (7th Cir. 2008)(Under Title IX, "a school district need not possess actual knowledge of a teacher's [harassment] directed at a particular plaintiff." (emphasis in original)(citations omitted); see also Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp. 551 F.3d 599, 605-06 (7th Cir. 2008)(Under Title IX, "a school district need not possess actual knowledge of a teacher's [harassment] directed at a particular plaintiff." (emphasis in original) (citation omitted)); Escue v. N.OK Coll., 450 F.3d 1146, 1154 (10th Cir. 2006)("[T]he actual notice standard does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student.")(citations and quotation omitted).

A second way to satisfy the notice requirement would be to show that an appropriate official had actual knowledge of sexual harassment by Meeks-Rydell of players other than Plaintiff

sufficient to alert the official to the possibility of Meeks-Rydell's sexual harassment of Plaintiff. J.F.K., 678 F.3d at 1260. An educational institution may be deemed to have "actual notice" of a student-plaintiff's harassment in a "teacher-on-student" case when it is aware of the teacher's "similar misconduct with other students". Bailey v. Orange Cty Sch. Bd., 222 F. App'x 932, 933 (11th Cir. 2007). Establishing actual notice in such a fashion is fact-intensive, and is sometimes successful and sometimes insufficient. See e.g. Broward, 604 F.3d at 1250-54, 1259 (two prior complaints were enough to satisfy Doe's burden of raising a material fact about actual notice because "[the two]complaints, when viewed collectively, provided actual notice to [the Principal] of a pattern of sexual harassment and a series of related allegations occurring over a period of nine months in [the teacher's] math classroom."); J.F.K., 678 F.3d at 1261 (while appropriate official knew employee's conduct was "inappropriate, devoid of professionalism, and reeked of immaturity," the known conduct was not of the same type of conduct of a sexual nature as the teacher in Broward); Davis, 233 F.3d at 1373 (a prior complaint about the teacher-abuser by a non-party victim was not enough to put principal and school board on notice); Doe v. Plaintfield Cmty Consol. Sch. Dist. 202, 2022 U.S Dist. LEXIS 92894, 2022 WL 1641684 (N.D. Ill. May 24, 2022)(in resolving motion to dismiss, court held that the plaintiffs' assertion that Defendant Coaches "knew

20

or should have known" that the football team had a long-standing custom, tradition or practice of assaulting team members in a sexual manner was wholly conclusory, and that the plaintiffs had not identified a school official with the appropriate authority to take action who witnessed or was told about the attack and then failed to take action.); see also H.C. v. Sch. Bd. of Palm Beach Cnty, 2022 U.S. Dist. LEXIS 205086 (S.D. Fla. Nov. 10, 2022)(the complaint fails to provide sufficient facts from which the Court can plausibly infer, that an appropriate person has actual notice that teacher was sexually harassing or abusing the plaintiff).

The undersigned finds that, like the plaintiffs in the related Demarcus action, in this action, Plaintiff has failed to offer facts from which the Court can plausibly infer that USA should have been on notice of Meeks-Rydell's alleged sexual harassment. First, aside from Plaintiff's conclusory assertion that USA knew or should have known that Meeks-Rydell had a propensity to engage in sexual harassment based on her reputation at her prior university, she has offered no facts in support of her conclusory assertion. The complaint is devoid of factual assertions regarding Meeks-Rydell's reputation at her former university or the appropriate persons at USA who purportedly knew of the alleged reputation.

Plaintiff has likewise failed to plausibly allege that student reports regarding alleged sexual harassment by Meeks-

Rydell would have placed USA on notice[6]. In her amended complaint, Plaintiff vaguely alleges that she "met with coaching staff regarding Meeks-Rydell's coaching tactics" (doc. 24 at 11), but this vague allegation does not support an inference that she reported sexual abuse to an appropriate official who was authorized to take corrective action.  Plaintiff also asserts that parents of Volleyball team members contacted Defendant Erdmann regarding Meeks-Rydell's "inappropriate conduct," and that Defendant Erdmann and Frisbey met with parents of team members in February 2019 and December 2020 about Meeks-Rydell's coaching tactics.  (Id. at 13-14).  The Court finds that Plaintiff's allegations regarding "inappropriate conduct" and "coaching tactics" that teammates' parents reported to Defendants Frisbey or Erdmann are not alleged with sufficient detail to permit a plausible inference that they were placed on notice of sexual misconduct by Meeks-Rydell.  Gebser, 524 U.S. at 291 (the Supreme Court noted that a single complaint from parents charging that a teacher made "inappropriate comments during class" was "plainly insufficient" to provide actual knowledge of the teacher's relationship with a student).

---

[6] Plaintiff also alleges that due to misconduct by the prior volleyball coach, Frisbey assured the volleyball players that she would closely supervise Meeks-Rydell when she was hired as USA's volleyball coach (doc. 24 at 5); however, the Court fails to see how alleged "unidentified" misconduct by the prior coaching regime sufficed to place USA on notice that the new coach would engage in sexual misconduct.

**Deliberate Indifference**

Title IX provides "that a recipient of federal education funds may be liable in damages under Title IX where it is deliberately indifferent to known acts of sexual harassment by a teacher." Davis, 526 U.S. at 641 (citing Gebser, 524 U.S. at 291).  Liability arises from "an official decision by the recipient not to remedy the violation." Gebser, 524 U.S. at 290.  An official with notice of sexual harassment is deliberately indifferent "where the [] the response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." Davis, 526 U.S. at 648.

Plaintiff alleges that a parents' meeting with Frisbey and Erdmann took place in December 2020, that Meeks-Rydell resigned in February 2021, and that  USA was indifferent to her teammates' complaints.  Interestingly, Plaintiff had left USA some seven months *before* the December 2020 meeting with Frisbey and Erdmann, and she has offered no facts from which it can be inferred that following the meeting, USA took no action to address whatever concerns were raised in the meeting. Plaintiff's complaint is completely devoid of any allegations regarding inappropriate conduct, let alone sexual harassment by Meeks-Rydell *after* this meeting.  While Plaintiff does assert that Defendants responded with deliberate indifference by actively conspiring among each other to cover-up and conceal Meeks-Rydell's sexual harassment and abusive conduct (doc. 24 at 22), aside from this vague and

conclusory assertion, Plaintiff has not provided any facts from which a reasonable inference could be drawn.   In the absence of factual allegations from which the Court can plausibly infer that appropriate officials received notice and acted with deliberate indifference, the undersigned recommends that Plaintiff's Title IX claim against USA be dismissed.

## B. 42 U.S.C § 1983 Claims

In Defendants' motions to dismiss, they argue that Plaintiff has failed to state a substantive due process claim.  USA argues that as a state university,  it is immune from all of Plaintiff's claims, except her Title IX claim. (Doc. 26 at 6). Defendants Erdmann,  Frisbey,  Moore,  Chilcoat,  and  Gandolfo  argue  that Plaintiff has not alleged any conscience-shocking conduct by any of  the  individual  University  Defendants  so  as  to  state  a substantive due process claim.  (Id. at 23).  Likewise, Meeks-Rydell asserts that her alleged conduct does not meet the "shock the conscience" standard required for a substantive due process violation.  (Doc. 29 at 12).

### 1. 42 U.S.C § 1983 and Qualified Immunity

Parties  acting  under  color  of  law  can  be  liable  for constitutional violations through 42 U.S.C § 1983.  To successfully state a claim under this statute, "a plaintiff must prove (1) a violation of  a  constitutional  right;  and  (2)  that  the  alleged violation was committed by a person acting under the color of state

law or a private individual who conspired with state actors." Melton v. Abston, 841 F. 3d. 1207, 1220 (11th Cir. 2016). The statute creates no substantive rights but only provides remedies for deprivations of rights created under federal law. Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). A defendant accused of violating a plaintiff's constitutional rights may nevertheless be shielded from liability if he is entitled to qualified immunity for his actions.

Qualified immunity protects government officials performing their discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Hartley v. Parnell, 193 F. 3d 1263, 1268 (11th Cir. 1999) (citation omitted). The party invoking a qualified immunity defense has the burden of showing that he was acting within his discretionary authority. Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002). The burden then shifts to the plaintiff to show that the defendant violated her constitutional rights, and that the right was clearly established when the violation occurred. Id. Law that is clearly established puts the government official "on notice" that his actions are clearly unlawful. Id. at 1350.

## 2. Plaintiff's 1983 Claims Against Defendant USA

Plaintiff alleges, in a conclusory fashion, that USA denied her substantive due process rights by hiring Meeks-Rydell with

25

knowledge of her wrongful conduct with her previous employer, and by failing to protect Plaintiff from Meeks-Rydell's harassment and sexual assault. (Doc. 24 at 18).  USA asserts that under the Eleventh Amendment and Article I, § 14 of the Alabama Constitution, it is immune from all of Plaintiff's claims except her Title IX claim[7]. (Doc. 26 at 27).

As a preliminary matter, Plaintiff's response is wholly devoid of any discussion of USA's immunity argument.  "It is firmly established that the Eleventh Amendment immunizes unconsenting states from private suits in federal courts for retrospective money damages, whether brought by their own citizens or by citizens of other states." Ostroff v. St. of Fla. Dep't of Health & Rehab. Servs., 554 F. Supp. 347, 355 (M.D. Fla. 1983). A state's Eleventh Amendment immunity extends to statewide agencies. Id. State law guides the determination of whether the entity raising the defense can be considered an "agency or instrumentality" of the state. Harris v. Bd. Of Trs. Univ. of Ala., 846 F. Supp. 2d 1223, 1233 (N.D. Ala. 2012). The Eleventh Circuit has held that state universities in Alabama, as arms of the state, are entitled to Eleventh Amendment immunity. Harden v. Adams, 760 F.2d 1158,1163

---

[7] Interestingly, in response to USA's first motion to dismiss, Plaintiff voluntarily withdrew all claims against USA except her Title IX claim (doc. 15 at 3); however, in her amended complaint, it appears Plaintiff has reasserted her 1983 claim and various state law claims against USA. (Doc. 26).

(11th Cir. 1985); <u>see also</u> <u>Davis v. Alabama State Univ.</u>, 613 F. Supp. 134, 139-140 (M.D. Ala. 1985) (holding that the Eleventh Amendment protects state university from former employee's § 1983 suit). Because USA is immune under the Eleventh Amendment from Plaintiff's substantive due process claim, the undersigned recommends that this claim against USA be dismissed.

Similarly, State immunity under Alabama Constitution, Article I, § 14 requires that Plaintiff's state claims against the University be dismissed. Section 14 "specifically prohibits the State from being made a party defendant in any suit at law or in equity" and "state agencies are 'absolutely immune from suit.'" <u>Harris,</u> 846 F. Supp. 2d at 1235 (internal citations omitted)[8]. Accordingly, the undersigned recommends that Plaintiff's state claims against USA be dismissed.

### 3. Plaintiff's 1983 Claims Against Coach Meeks-Rydell

Plaintiff asserts that she has plausibly alleged a substantive due process claim under 1983 against Meeks-Rydell and has provided factual assertions showing that Meeks-Rydell engaged

---

[8] Moreover, as asserted by USA, Plaintiff has failed to state a claim upon which relief may be granted against USA because it is not a "person" subject to suit under 42 U.S.C. § 1983. (Doc. 26 at 7). The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). USA is a state institution of higher learning and is not a person.

in a "flagrant pattern and practice of sexual harassment and other physical and emotional assault." (Doc. 32 at 7). According to Plaintiff, Meeks-Rydell's abusive conduct deprived her of her liberty interest in maintaining bodily integrity and placed her physical and mental health in danger. (Id. at 8). She cites several instances in the amended complaint where Meeks-Rydell is alleged to have violated her substantive due process rights, including:

- Pinching Plaintiff's buttocks; (Id. at ¶ 36);
- Intentionally isolating Plaintiff from her teammates, friends and family (Id. at ¶¶ 56-57).
- Causing Plaintiff such severe anxiety and depression that she lost over twenty-five pounds in less than a year; (Id. at ¶ 63); and
- Forcing Plaintiff to hug her and tell Meeks-Rydell, "I love you" (Id. at ¶ 76).

(Doc. 32 at 8).

The Fourteenth Amendment prohibits States and their components from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Clause contains a substantive component which "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992) (citation omitted); McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) ("The substantive component of the Due Process Clause protects those rights that are

"fundamental," that is, rights that are "implicit in the concept of ordered liberty"”).   While Plaintiff argues she has a constitutionally protected interest in her bodily integrity, she has cited no controlling authority for this proposition.  However, the undersigned is cognizant that some courts have recognized a constitutionally protected liberty interest in a person's bodily integrity derived from the substantive due process component of the Fourteenth Amendment, and that it is necessarily violated when a state actor sexually abuses a schoolchild.  Hackett v. Fulton Cty. Sch. Dist., 238 F. Supp.2d 1330, 1353 (N.D. Ga. 2002) (recognizing "a 'liberty' interest by a student in his 'bodily integrity' such that when a state actor, such as a public teacher, violates that 'bodily integrity', a claim under the Fourteenth Amendment arises.").

Substantive due process is violated only when state conduct "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." Cty. of Sacramento v. Lewis, 523 U.S. 833, 847, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) (citations omitted); White v. Lemacks, 183 F.3d 1253, 1259 (11th Cir. 1999) (holding that only conduct that is "arbitrary, or conscience shocking, in a constitutional sense," violates of substantive due process, "and that standard is to be narrowly interpreted and applied.")

> The Supreme Court has acknowledged that "the measure of what is conscience-shocking is no calibrated yard stick." <u>Cty. of Sacramento v. Lewis</u>, 523 U.S. 833, 847, 118 S.Ct. 1708, 140 L. Ed. 2d 1043 (1998). We know for certain, however, that a showing of negligence is insufficient to make out a constitutional due process claim. <u>Id.</u> at 847-48. And even intentional wrongs seldom violate the Due Process Clause. Acts "intended to injure in some way unjustifiable by any government interest" are "most likely to rise to the conscience-shocking level." <u>Id.</u> But, even conduct by a government actor that would amount to an intentional tort under state law will rise to the level of substantive due process violation only if it also "shocks the conscience." <u>Dacosta v. Nwachukwa</u>, 304 F.3d 1045, 1048 (lth Cir. 2002).
>
> "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." <u>Lewis</u>, 523 U.S. at 846.

<u>Waddell v. Hendry Cty. Sheriff's Office</u>, 329 F. 3d 1300, 1305 (llth Cir. 2003) (citation omitted). Accordingly, as a threshold matter, the Court must determine whether the facts, viewed in the light most favorable to Plaintiff, involve conduct inflicted upon Plaintiff that "shocks the conscience." [9]

---

[9] In the school setting, the Eleventh Circuit has adopted a separate test that must be met before liability can be found based on action that constitutes corporal punishment. It requires a court to find that the action is "obviously excessive" as an objective matter and subjectively intended in such a way that it was reasonably foreseeable that serious bodily injury would result. <u>See</u> <u>T.W. ex rel. Wilson v. Sch. Bd of Seminole Cty.</u>, Fla. 610 F.3d 588, 589-99 (llth Cir. 2010) ("The key inquiry is not what form the use of force takes but whether the use of force is related to [the student's] misconduct at the school and. . .for the purpose of discipline.)(citation and quotation omitted). Whether alleged mistreatment is deemed corporal punishment or not, liability will only arise in "extraordinary circumstances" that constitute action that is so brutal, demeaning and harmful as literally to shock the

Whether conduct "shocks the conscience" depends on the factual circumstances of a particular case.  Nix v. Franklin Cty Sch. Dist., 311 F.3d 1373, 1375 (11th Cir. 2002).  Nix involved the death of a high school student who was electrocuted during a voltage-reading demonstration in his class.  The Eleventh Circuit affirmed the grant of summary judgement to the defendants, and cautioned that in analyzing whether conduct shocks the conscience, courts should avoid allowing substantive due process to encroach into the tort field.  Id. at 1376.

In another case that arose in a school setting, the Eleventh Circuit determined that the plaintiff had sufficiently alleged a substantive due process claim based on conduct that shocked the conscience where a high school coach struck the plaintiff with a weight lock, knocked his eyeball out of its socket, and permanently blinded him in his eye.  Neal v. Fulton County Bd. Of Educ., 229 F. 3d 1069,1074 (11th Cir. 2000).  The court reasoned that the student's substantive due process rights were implicated because the coach's exercise of corporal punishment was "so brutal, demeaning and harmful as literally to shock the conscience of the

---

conscience of the court.  Id. at 602.  In other words, the same "shocks the conscience" standard applies to a plaintiff's claim regardless of whether it arise from actions characterized as "corporal punishment" or "abuse."  See Hatfield v. O'Neill, 534 F. App'x 838, 845 (11th Cir. 2013) (applying the 'shock the conscience' standard we have previously employed in our corporal punishment cases" to conduct that was not considered to be corporal punishment).

court." Id. at 1075.  The court concluded: "[t]he test we adopt today will, we think, properly ensure that students will be able to state a claim only where the alleged corporal punishment truly reflects the kind of egregious official abuse of force that would violate substantive due process protections in other, non-school contexts." Id. at 1076.

Similarly, the Eleventh Circuit in Kirkland ex rel. Jones v. Greene Cty Bd. of Educ., 347 F.3d 903, 904 (11th Cir. 2003), affirmed that a principal's action in striking a thirteen-year old student with a metal cane in the neck, ribs, and back-including once on the head as the student was doubled over protecting his chest, with sufficient force to leave a large knot on his head and causing him to suffer continuing migraine headaches-constituted "conscience-shocking behavior" when the student was unarmed and not physically threatening in any manner. Id. (citation and quotation omitted).

While the above-referenced cases involved school-age children, DaCosta v. Nwachukwa, 304 F. 3d 1045 (11th Cir. 2002) involved a professor/student conflict at Georgia Military College.  In DaCosta, the Eleventh held that a college professor's violent and malicious behavior toward the plaintiff, a student, did not rise to the level of a substantive due process violation.  The plaintiff in DaCosta alleged facts reflecting that she and the professor had a disagreement that culminated in the professor purposefully

32

slamming the door in her face. Id. at 1047. As the plaintiff attempted to protect her face from the door, her arm shattered the glass window on the door and became lodged in the cracked pane. Id. at 1047. The professor then "violently swung" the door back and forth several times in an attempt to knock the student back from the door. Id. After that proved unsuccessful, the professor reached through the cracked glass pane, shoved the student's face, and tried to forcibly dislodge her arm from the window. Id. Several other students in the class had to physically restrain the professor until police arrived and arrested the professor for criminal battery. On appeal, the Eleventh Circuit reversed the district court's denial of the professor's motion to dismiss, even though it noted that the facts described the tort of intentional battery. Id. at 1048. The court explained that "such conduct, malicious as it may have been" did not amount to a federal constitutional violation. Id.

Similarly, in Skinner v. City of Miami, 62 F.3d 344 (11th Cir. 1995), a firefighter sued his colleagues for violating his substantive due process rights by hazing him in an especially degrading and humiliating fashion. Id. at 346. Specifically, the plaintiff alleged that his colleagues threw him to the floor and handcuffed him. While handcuffed on the floor, a colleague, who was naked, straddled the plaintiff's chest, grabbed his head, and rubbed his scrotum over the top of the plaintiff's head. The case

went to trial and the jury returned a verdict for the plaintiff. On appeal, the Eleventh Circuit reversed and held that while the plaintiff had proven that he was assaulted, that was a tort created by state law. The court held that plaintiff had failed to point to any authority demonstrating that he had suffered a constitutional deprivation as opposed to a state law tort. Thus, he was not entitled to recover under Section 1983.

In another case, Davis v. Carter, 555 F. 3d 979, 982 (11th Cir. 2009), the Eleventh Circuit once again discussed the standard required to state a substantive due process claim. In Davis, the parents sued the school system and various school employees, including the football coaches for violations of their son's substantive due process rights after the son died the morning after a voluntary workout session for the football team. The parents alleged that their son was subjected to intense and unreasonable practice that caused him to collapse and die the next morning, that the coaches failed to provide enough water to keep their son hydrated, ignored signs and his complaints that he was becoming dehydrated, subjected him to rigorous conditioning drills at the end of a two-hour practice, and failed to check on him until after a team meeting although he had collapsed in the middle of drills. On the defendant's motion to dismiss, the district court dismissed the parents' claims against the school system and some of the system employees, but concluded that the parents' allegations were

34

sufficient to support a finding that the coaches acted willfully or maliciously with an intent to injure the student and that the coaches were not entitled to qualified immunity. On appeal, the Eleventh Circuit determined that the facts militated more toward a finding that the coaches were deliberately indifferent to the safety risks posed by their conduct, but that in the school setting, the complaint's allegations of deliberate indifference, without more, did not rise to the conscience-shocking level required for a constitutional violation." Id. at 984. The court noted that while the circumstances of the student's death was "truly unfortunate", the parents' claims were "properly confined to the realm of torts." Id.

Later, in Daniel v. Hancock Sch. Dist., 626 Fed. Appx. 825 (11th Cir. 2015), the Eleventh Circuit once against stressed that where a plaintiff claims a violation of substantive due process, to prevail, the plaintiff must prove that the defendant's conduct shocks the conscience, and that in non-custodial circumstances, the standard is "exceedingly high" and is to be "narrowly interpreted and applied", such that "even intentional wrongs seldom violate the Due Process Clause". Id. at 829-830. In Daniel, a football coach alleged that police officers tasked with providing security at a football game violated his substantive due process rights when they purposefully pepper-sprayed his players for the purpose of injuring and disabling them so as to assist players

35

from the opposing team in assaulting them.  The plaintiff alleged that in the altercation, he was assaulted by a student assailant and sustained serious and permanent injuries as a result.  In affirming the district's order granting the defendants' motion to dismiss, the appellate court held that as terrible as the allegations were, they did not satisfy the "shocks the conscience" standard and that the harm the plaintiff suffered was redressable through his state law claims.  Id.

Against this backdrop of cases, and construing the facts in the light most favorable to Plaintiff with respect to her assertions regarding alleged sexual harassment, and physical and emotional abuse by Meeks-Rydell, the undersigned finds that Plaintiff's allegations do not meet the "exceedingly high" standard required for a substantive due process violation. Plaintiff's allegations of butt pinches, forced hugs, forced "I love yous", unwelcomed kisses to the forehead/cheeks, and 4:00 a.m. breakfast club drills, while actionable as state torts, do not rise to the level of extreme conduct that the Eleventh Circuit determined in Dacosta, and the other cited cases, determined was not sufficient to demonstrate the "arbitrary, egregious and conscience-shocking behavior" necessary to establish a substantive

due process violation[10].    Moreover, assuming *arguendo* that the alleged conduct did rise to the level of conscience-shocking, Plaintiff has not identified any controlling cases from which this Court could conclude that at the time of the alleged misconduct, the law was clearly established that there is a constitutional, substantive due process right to be free from unwanted touching by a college coach under circumstances similar to those alleged here. Thus, Plaintiff cannot overcome qualified immunity. Accordingly, the undersigned recommends a finding that Plaintiff has failed to state a substantive due process claim against Defendant Meeks-

---

[10] The undersigned observes that there exists cases from lower courts within the Eleventh Circuit where courts concluded that the minor plaintiffs alleging sexual harassment by teachers had stated a plausible substantive due process claims. The cases involved minors, as opposed to college students, and alleged conduct far worse than what is alleged in this case. For instance, Hackett v. Fulton County School District, 238 F. Supp. 2d 1330 (N.D. Ga. 2002) (high school teacher came up with an elaborate ruse to have minor students come to his house to compete and perform a series of experiments for a non-existent scholarship. During one of the experiments, the student was instructed to put on a blindfold, and discern whether a male or female doctor was touching him.  The teacher was performing the "experiment" and inappropriately touched the student's body, including his genitals.); Thomas v. City of Clanton, 285 F. Supp. 2d 1275, 1279 (M.D. Ala. 2003) (Minor was arrested and the arresting officer instructed him to take off his clothes, bend over and grab his ankles while he strip-searched him.  Later, the officer took the minor to his home and offered him alcoholic drinks and asked if he had ever performed oral sex on a man.)

Based on the facts alleged, the courts in Hackett and Thomas found that the alleged sexual abuse of school age students rose to the level of a substantive due process violation. Compare Doe v. Perkins, 2020 U.S. Dist. LEXIS 172390, 2020 WL 5632931 (N.D. Ala. September 21, 2020) (the court held that a high school student's allegations that her coach would "intentionally" brush up against her breasts while guarding her in basketball practice and on one occasion, he grabbed her butt were neither arbitrary nor conscience-shocking. The Court noted that while the conduct appeared serious enough to support a state-law tort, the allegations did not shock the conscience.)

Rydell and has further failed to establish that the law was clearly
established at the time of the alleged misconduct.

### 4. Plaintiff's 1983 Claims Against University Defendants

Plaintiff has also asserted substantive due process claims
against the individual USA Defendants, namely Defendants Erdmann,
Frisbey, Moore, Chilcoat and Gandolfo, and appears to base her
claims on her assertions that Defendants had knowledge of Meeks-
Rydell's sexual, emotional, and physical abuse of Plaintiff and
failed to take appropriate corrective action.  In her response,
Plaintiff asserts she has plausibly alleged 1983 claims against
Erdmann, Frisbey, Moore, Chilcoat, and Gandolfo in their
individual capacities.  (Doc. 31 at 14).  According to Plaintiff,
Frisbey and Moore, as the University's Senior Associate and
Associate Athletic Directors, respectfully, were supervisors of
Meeks-Rydell at the University with the authority to take
corrective action under 1983.  (Id. at 15).  Plaintiff further
asserts that as state actors, all University Defendants are liable
under 1983 if they participated in the constitutional violations
or if there is a casual connection between a supervisor's actions
and the violations.  (Id. at 15).  She also alleges that the
University Defendants not only knew of Meeks-Rydell's violations
of Plaintiff's constitutional rights, but they actively conspired
with her to cover-up her due process violations so that she could

38

continue her unconstitutional conduct[11].  (Id. at 17). With respect to Defendants Chilcoat and Gandolfo, both of whom were assistant coaches, Plaintiff alleges that they were present and that they participated in some of the alleged misconduct.(Doc. 24 at 14.)

Supervisors are not responsible for their subordinate's unconstitutional acts "based on respondeat-superior or vicarious-liability principles." Piazza v. Jefferson Cnty, Ala., 923 F. 3d 947, 957 (11th Cir. 2019).  Instead, a supervisor can only be held liable under Section 1983 "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation".  Gonzalez v. Reno, 325 F. 3d 1228, 1235 (11th Cir. 2003) (citations omitted.)

To state a claim against a government actor for a violation of substantive due process, a plaintiff must allege conduct that "shocks the conscience." Waddell v. Hendry County Sheriff's Office, 329 F. 3d 1300, 1305 (citations omitted).  A state official's deliberate indifference may constitute a due process violation but, in the "non-custodial setting," the alleged violation would "require a showing of deliberate indifference to an extremely great

_____

[11] Plaintiff's complaint is totally devoid of any facts from which it can be inferred that the University Defendants conspired with Meeks-Rydell to cover up her alleged misconduct.

risk of serious injury to someone in [the plaintiffs'] position."
Id. (citation omitted).

     With respect to the individual USA Defendants, Plaintiff has
simply not alleged facts from which it can be inferred that they
engaged in conduct that meets the high bar required to state a
substantive due process claim.  Nor has Plaintiff identified any
controlling cases from which this Court could conclude that at the
time of the alleged misconduct, the law was clearly established
that the failure to properly investigate a sexual harassment claim
could rise to the level of a substantive due process violation.
Accordingly, the undersigned recommends that Plaintiff's
substantive due process claims against the individual University
Defendants be dismissed.

     **C. Remaining State Claims**

     Considering the factors of judicial economy, convenience, and
fairness to the litigants, the undersigned recommends that the
Court decline to exercise supplemental jurisdiction over the
remaining state law claim as no scheduling order has yet been
entered and discovery has not yet commenced.  See Raney v. Allstate
Ins. Co., 370 F. 3d 1086, 1089 (11th Cir. 2004) (encouraging
district courts to dismiss remaining state claims when federal
claims have been dismissed before trial).  Thus, Plaintiffs' state
law claims should be dismissed without prejudice. Daniel, 626 Fed.
Appx at 836 (the district court properly dismissed Daniel's federal

claims; thus, the district court did not abuse its discretion by declining to exercise supplemental jurisdiction.)

**IV.   <u>CONCLUSION</u>**

For the reasons discussed above, the undersigned RECOMMENDS:

that Defendants the University of South Alabama, Joel Erdmann, Jinni Frisbey, Chris Moore, Rob Chilcoat and Patricia Gandolfo's Motion to Dismiss Plaintiff's Amended Complaint or Motion for Summary Judgment (Doc. 26) and Defendant Alexis Meeks-Rydell's Motion to Dismiss Plaintiff's Amended Complaint or Motion for Summary Judgment (Doc. 29) be granted in part, and denied in part[12];

that Plaintiff's Title IX claim, substantive due process claim and state law claims against University of South Alabama be dismissed with prejudice;

that Plaintiff's substantive Due Process claims against Defendants Erdmann, Frisbey, Moore, Chilcoat, Gandolfo and Meeks-Rydell be dismissed with prejudice, and

that the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims against Defendants Erdmann, Frisbey Moore, Chilcoat, Gandolfo and Meeks-Rydell, and that those claims be dismissed without prejudice.

---

[12] The undersigned has not addressed Defendants' statute of limitations arguments in light of the recommendation of dismissal on other grounds.

41

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

42

**DONE** this **6th** day of **February 2024.**

                    **/s/ SONJA F. BIVINS**
                **UNITED STATES MAGISTRATE JUDGE**